cute the said lease. In witness whereof," etc. It thus appears that the plaintiffs, by their efforts, brought the parties together; that they procured a lessee ready and willing to take the premises as they had undertaken to do; and that the meeting of the parties resulted in the execution of a contract under seal for the leasing of the premises. That was all the plaintiffs could do as brokers. It was no part of their duty as brokers to see that the defendant put up the building, or complied with the terms of the contract on her part; and hence the subsequent inability of the defendant to put up the building, and the rescission of the contract by the mutual consent of the parties in consequence of such inability, cannot be charged against the plaintiffs, in the absence of an express agreement to the effect that they should have no compensation unless the contract between the parties was fully performed. *Hodgkins* v. *Mead*, (City Ct. Brook.) 8 N. Y. Supp. 854; *Bach* v. *Emerich*, 35 N. Y. Super. Ct. 548; *Simonson* v. *Kissick*, 4 Daly, 143; *Glentworth* v. *Luther*, 21 Barb. 145; *Barnard* v. *Bonnot*, 1 Abb. Dec. 108. There having been no express agreement in this case that the plaintiffs should have no compensation unless the contract between the defendant and the trustees was fully carried out, the trial judge properly refused to dismiss the complaint, or to direct a verdict for the defendant, and the case was properly submitted ·to the jury. The record discloses no exception which is tenable. The judgment and order should be affirmed, with costs.

---

### FIRST NAT. BANK OF CHICAGO *v.* DEAN *et al.*

*(Superior Court of New York City, General Term.* January 11, 1892.)

1. ESTOPPEL—WAREHOUSEMAN—RECITALS OF WAREHOUSE RECEIPT.
    A warehouseman, who issues a receipt for goods which states upon its face that the goods are stored at a free warehouse, is estopped, when the goods are afterwards demanded by a *bona fide* transferee of the receipt for value, from setting up a claim for government taxes thereon accruing because of the storage of the goods in a bonded warehouse.

2. CONFLICT OF LAWS—WAREHOUSE RECEIPTS—PROTECTION AGAINST EQUITIES.
    A warehouse receipt, for goods stored in New York, was issued and transferred in New York, and afterwards transferred to plaintiff as collateral security for a loan in a state by the law of which plaintiff, a resident there, was protected from equities existing between prior parties. *Held* that, in an action on the receipt against the warehouseman brought in New York, the rights of all parties to the transaction must be determined by the law of New York, although thereby a person taking a negotiable instrument as collateral security is not entitled to protection as a *bona fide* purchaser for value without notice.

Appeal from jury term.

Action by the First National Bank of Chicago, as the holder of two warehouse receipts, against Robert J. Dean and others to recover damages against the defendants, who are warehousemen, for failure to deliver to plaintiff the goods called for by said receipts after demand made therefor. The court submitted certain questions of fact to the jury for a special finding thereon. The facts found by the jury are as follows: *First.* That the plaintiff did, on the faith of the warehouse receipts issued by the defendants, make additional advances to Meade, Von Bokkelen & Co., so that their position would be changed for the worse, if not allowed to enforce the receipts according to their legal effect. *Second.* The injury aforesaid would amount to as much as the value of the goods. *Third.* The plaintiff believed that the goods were free goods; that is, goods on which the government tax had been paid, and they did act upon that belief in their dealings with Meade, Von Bokkelen & Co. *Fourth.* The value of the goods at the time the demand was made for them was $1,342.50. From a judgment for plaintiff, defendants appeal. Affirmed.

The opinion of McADAM, J., at jury term, was as follows:

"Warehousemen are not only responsible for damages which arise by their tortious acts, but sometimes for losses occasioned by the innocent mistake of

themselves or their servants. Thus, they are liable for making a delivery of goods to a person not entitled to receive them. Story, Bailm. § 414; 2 Amer. & Eng. Enc. Law, 888, 890. Their business has increased with the evolution of trade and commerce, and their rights and liabilities are defined by custom and by statute, so that they are generally understood by business men. They have for years issued warehouse receipts for goods stored with them, and the transfer thereof from one holder to another has been regarded as a symbolical delivery of the goods. These receipts were not negotiable at common law, for the reason that 'negotiability only exists in the case of absolute promises for the payment of money, a thing negotiable in itself, and which cannot be reclaimed by the true owner from any one who has received it *bona fide* and in exchange for a valuable consideration. But chattels personal are wholly unsusceptible of negotiation in themselves, and it was deemed manifestly inconsistent to give the documents which represent them a different character.' 1 Smith, Lead. Cas. (Amer. Ed.) 895, 896.

"To facilitate the transfer of warehouse receipts, and to aid transactions on the faith thereof, a statute was passed making them negotiable by indorsement. Laws 1858, c. 326, § 6. This was designed to protect purchasers and pledgees, irrespective of the validity of the transfer as between the immediate parties. *Whitlock* v. *Hay*, 58 N. Y. 484. To further protect the public, warehousemen were forbidden to issue receipts or vouchers for goods not actually in store, and it is a penal offense to issue fictitious certificates. Laws 1858, c. 326; Laws 1866, c. 440; Pen. Code, § 629. Under these provisions, the plaintiff, by the transfer to it of the warehouse receipts as security for present and future advances, became the owner of the goods stored, and entitled to their possession without regard to the equities existing between the preceding holders. A lender on collateral security is as much a purchaser for value as if he bought out and out. *Roxborough* v. *Messick*, 6 Ohio St. 448; 2 Amer. Lead. Cas. (5th Ed.) 235. The exigencies of trade called warehouse receipts into being. They are substantially acknowledgments by public or private agents that they have received merchandise from whom or on whose account, and usage has made the possession of such documents equivalent to the possession of the property itself. Thus, warrants or receipts are habitually issued for the merchandise deposited in the various warehouses; and as it is expressly or tacitly agreed that the goods shall be surrendered if the warrant, vouched by the order or indorsement of the owner, is presented, a sale, attended by the transfer of such an instrument, is as effectual as if the property were handed over to the purchaser. This is a mere extension of the rule that, when actual delivery is impracticable, a symbol may be substituted for the goods. 1 Smith, Lead. Cas. (8th Ed.) 1223. The goods represented by the warehouse receipts, in this instance, consisted of brandy on which a government tax was due; and, if the receipts had indicated that the goods were stored in a bonded warehouse, the plaintiff would have been chargeable with notice of the act of congress in regard to internal revenue, and it would have become part of the contract. *Van Schoonhoven* v. *Curley*, 88 N. Y. 187. The receipts, instead of stating that the brandy was stored in a bonded warehouse, contained a declaration that it was stored at 492 and 494 Greenwich street, New York city; and at the head of the receipts is a further declaration that the warehouse 492 and 494 Greenwich street is a 'free warehouse,'—a phrase which means a warehouse for the storage of goods not liable to or relieved from bonded duties. The receipts were issued to Marschall, Spellman & Co., and were by them transferred to Meade, Von Bokkelen & Co., of Chicago, Ill., and that company at Chicago, aforesaid, transferred them to the plaintiff as security for present and future advances; and the plaintiff, upon receiving the transfers, made fresh advances, exceeding the value of the property represented by the warehouse receipts. The jury so found, and the evidence sufficiently sustains their finding. The representation at the head of the receipts, that

the goods were stored in a free warehouse, estops the defendants from claiming, as against the plaintiff, a *bona fide* transferee of the receipts, that the brandy was subject to a government tax, upon the familiar principle that, where one of two innocent persons—that is, persons each guiltless of an intentional wrong—must suffer a loss, it must be borne by that one of them who, by his conduct, acts, or omissions, has rendered the injury possible.  2 Pom. Eq. Jur. § 803.

"Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy.  Id. § 804.  To constitute such an estoppel, the following elements are essential:  '(1) There must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him.  (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or, at least, with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon.  (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it.  (6) He must in fact act upon it in such a manner as to change his position for the worse.'  Id. § 805.  The acts of the defendants contain all the ingredients necessary for an estoppel, and the jury found against the defendants on all the facts required to make the estoppel effectual.  In a free warehouse, the warehouseman is the sole custodian of the goods, and when his charges are paid the owner is entitled to them.  In a bonded warehouse the goods are in the joint custody of the proprietor thereof and a storekeeper assigned to it by the government, (Rev. St. U. S. § 3274;) and, in order to get the goods out, the owner must settle with both the warehouseman and the government.  For an interesting account of the origin and growth of the warehouse system in England and the United States, see 2 Kent, Comm. (11th Ed.) 737.  The plaintiff could not, under the circumstances, be required by the defendants to pay the government tax as a condition precedent to the right of claiming the goods from the defendants, and the latter were guilty of conversion in imposing that as a condition of their delivery.

"Counsel have discussed at length the question whether the Illinois or the New York rule is to govern in determining whether the plaintiff is a *bona fide* transferee of the receipts for value.  Under the Illinois rule, one who takes a negotiable instrument in good faith, in payment, or as collateral security for the payment, of an antecedent indebtedness, parts with such value as entitles him to all the rights of one who purchases a negotiable instrument for a present consideration, without notice of existing equities.  *Manning* v. *McClure*, 36 Ill. 499; *Butters* v. *Haughwout*, 42 Ill. 18.  The goods were stored in New York.  The contract was made in that state, and was to be performed there, and the plaintiff is in the forum of that state seeking to enforce the obligation against the defendants, who reside there; so that both the *lex loci* and *lex fori* unite in requiring the rights and obligations of the parties to be determined exclusively by the laws of this state.  *Hallgarten* v. *Oldham*, 135 Mass. 1; *Guillander* v. *Howell*, 35 N. Y. 657; *Loftus* v. *Bank*, 133 Pa. St. 97, 19 Atl. Rep. 347; *Keller* v. *Paine*, 107 N. Y. 83, 13 N. E. Rep. 635; *Warner* v. *Jaffray*, 96 N. Y. 248; *Dickinson* v. *Edwards*, 77 N.

Y. 573; *Bank* v. *Low*, 81 N. Y. 566. It cannot be that if a negotiable obligation, made in this state, is there transferred for a precedent debt, the transferee is not a *bona fide* holder to shut out equities in favor of the maker; and yet if the obligation is transferred in Illinois, to a resident of that state, our courts must ignore the rule adopted in this state and follow that prevailing in Illinois, and shut out the equities. Any such doctrine would be an unjust discrimination in favor of non-residents against residents of our own state, inconsistent with every principle of comity or notion of uniform justice, and cannot prevail. As against Meade, Von Bokkelen & Co., its obligation might, in a proper action, be determined by the laws of Illinois, because its indorsement (which is, to an extent, an independent contract) was made and delivered there, and it cannot object that its obligation is determined according to the law of the place where it was entered into. Story, Confl. Laws, § 287*a*; *Weil* v. *Lange*, 6 Daly, 549; 2 Amer. & Eng. Enc. Law, 329, 330. Under the finding of the jury, which is satisfactorily sustained by the evidence, the plaintiff became a *bona fide* owner of the warehouse receipts, under the laws of this state, as declared in *Coddington* v. *Bay*, 20 Johns, 636, and kindred cases; so that it is of little practical moment whether the Illinois or the New York rule is to control. The plaintiff became the owner and holder of the two receipts, and entitled to the possession of so much brandy stored in a free warehouse, with title unimpaired by equities existing between prior holders. The defendants, having refused to give up the brandy, are liable for the value thereof as assessed by the jury, $1,342.50, with $98.50 interest thereon, making together $1,441, and for this amount the plaintiff is entitled to judgment."

Argued before FREEDMAN and GILDERSLEEVE, JJ.

*Hatch & Warren*, for appellants. *Peckham & Tyler*, for respondent.

PER CURIAM. The judgment is affirmed, with costs, on the opinion of the court below.

---

LOEBER *v.* ROBERTS.

(*Superior Court of New York City, General Term.* January 11, 1892.)

NEGLIGENCE—FIRES—EVIDENCE.

Plaintiff cannot recover damages caused by a fire communicated to his premises by means of a furnace kept by defendant on adjoining premises, without proof of defective construction, failure to repair, or negligence in its use. Negligence will not be inferred from the mere fact of the fire, so as to cast the burden on defendant to disprove negligence.

Appeal from jury term.

Action by Charles H. Loeber against Isaiah L. Roberts to recover damages alleged to have been caused by defendant's negligence. Judgment dismissing complaint. Plaintiff appeals. Affirmed.

Argued before FREEDMAN, MCADAM, and GILDERSLEEVE, JJ.

*W. C. Beecher*, for appellant. *A. S. Cushman, E. Crandall*, and *C. S. Truax*, for respondent.

MCADAM, J. The plaintiff sued to recover $3,000 damages for injury to a stock of photographic supplies contained on the second floor of the premises No. 111 Nassau street, because of a fire which occurred therein April 10, 1889. The defendant, who is a chemist, occupied part of the floor above the plaintiff. The complaint charged that the defendant kept a furnace in his rooms, and negligently kept and maintained a fire therein at too great a heat for safety, and negligently permitted the fire to burn in the furnace unattended and uncared for, and that in consequence thereof the fire communicated with the plaintiff's premises, and destroyed his stock of merchandise. The furnace rested on a base of brick, and whether there was a sheet-iron