(18 App. Div. 106.)

HOMMEL et al. v. MESEROLE.

(Supreme Court, Appellate Division, Second Department. May 18, 1897.)

JUSTICES OF THE PEACE—REVIEW BY COUNTY COURT.
The county court cannot reverse a justice's judgment, where the appeal is not for a new trial, if there is any evidence to support the judgment.

Appeal from Kings county court.

Action by Ellen C. Hommel and another against Jeremiah V. Meserole to foreclose a mechanic's lien. From a reversal of a justice's judgment in favor of defendant, plaintiffs appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Arthur P. Hilton, for appellants.
William H. Good, for respondent.

HATCH, J. We held, in Ludlum v. Couch, 10 App. Div. 603, 42 N. Y. Supp. 370, that, if there was any evidence to support the judgment of the justice, no authority existed in the county court to reverse the judgment as against the weight of evidence. In the present case the county court has assumed to pass upon the testimony, and reverse the judgment. Unless, therefore, there was an entire absence of evidence in support of the judgment rendered by the justice, the decision of the county court cannot be upheld. The action is brought to foreclose a mechanic's lien, which arose out of a claim for stone furnished to curb a street. One Hesse had a contract with the defendant to grade and pave the street in front of his premises, for which he was to receive about the sum of $264. There was also some other paving for other parties in the same locality, for which Hesse also had a contract. He entered into a contract with a son of the defendant to survey the premises which he was to pave, for which he was to pay the sum of $200. When the paving for defendant was completed, Hesse was in Europe. His wife held a power of attorney from him, authorizing her to ask, demand, sue for, recover, and receive all moneys, demands, and accounts due and owing from any persons to the said Hesse. The defendant did not pay the money due for the paving to the wife, but delivered the check therefor to his son, who in turn applied to Hesse's foreman in charge of the paving, delivering to him a check for $64, and a receipt for

$264. The foreman took this check and receipt to Mrs. Hesse, giving her the check, and, as she testifies:

"The foreman said I would get $200 from the balance. My husband owed Mr. Meserole $200. I should give a receipt for $200, which my husband owed Mr. Meserole. He said it was the son. I signed this [receipt] at the request of the foreman. I received only $64 in all from Mr. Meserole. The foreman spoke to me in English. My daughter explained to me. The foreman said Mr. Hesse owed $200 to Mr. Meserole. I know the place was surveyed, but I don't know if Mr. Hesse paid the money."

This is the material and substantial part of Mrs. Hesse's testimony. She was not able to speak English, and only understood what was interpreted to her by her daughter. It is not clear from her testimony that she understood just what the transaction was. If she understood from the foreman that she would get $200 from any balance, if she signed the receipt, then she was clearly misled into signing it. The justice was authorized to find that she did not understand the nature of the transaction, and in fact signed the receipt at the request of the foreman, without at all intending to discharge the defendant from liability for the amount due from him on account of the money due for paving. She had no authority, by virtue of the power of attorney, to adjust and settle the matter between Meserole and his son, or to apply the money due in discharge of the son's debt (Craighead v. Peterson, 72 N. Y. 279); and the justice was authorized in concluding that this transaction did not discharge the defendant from his obligation to pay. The giving of the check to the son was not payment, unless the son thereafter applied it in discharge of the debt. Hesse testified that he had not been paid for the work, and that he did not know what his wife had done, or that she had given a receipt for money which she did not receive; that the reason why he did not make any claim against the defendant was that he had given a power of attorney to other parties, and the matter was out of his hands. He further testified that there was no talk with Meserole's son about paying the $200 for surveying out of the cost of the paving, or that he was only to receive $64 in money on account of it. His wife told him of the receipt and check when he came back from Europe; that he knew the check was for some of the work, but he did not know at the trial what the cost of the Meserole work was. After the case was closed, it was reopened, and Hesse was recalled, and gave this testimony:

"Q. Did you say to Mr. Meserole that you were to receive the difference between the survey price and grading and paving bill? A. No, sir. Mr. Meserole said that. I said nothing of the kind. Q. What did you say to that? * * * A. I said the bill and receipt were all right. I thought it would settle the whole matter." Cross-examined: "I never saw the receipt and check before. The present conversation took place on the street, after the case was closed. I did not say I had made a mistake in my testimony. I simply said I was satisfied with the receipt; that I would have no claim against Mr. Meserole."

Upon this testimony the county court concluded that, even though the wife had no authority to settle, Hesse had ratified her acts. We do not find conclusive evidence of ratification in this or all the testimony. He had made an assignment shortly after his return from Europe, and when he was asked if he had done anything about the

matter he said he had given a power of attorney to other parties. By this term we understand him to refer to the assignment. He was not speaking of the power of attorney held by his wife, but of that which he had given to other parties. Instead of showing by this that he had ratified, it shows quite the contrary, because it authorizes the inference that he expected the persons to whom he had assigned to look after it, as he did not regard himself as authorized to do it. Nor is the ratification helped out by his last testimony. It evidently referred to a conversation that he had during the trial, or shortly after it closed. It evidently did not refer to any intent or condition of mind which he held upon his return from Europe. This is excluded by his statement that it was the first time he saw the check and receipt; that the conversation took place upon the street, after the case was closed. Evidently the statement was a mere expression of opinion as to the effect of the papers. At least, the justice was authorized to draw that conclusion from it. If it was asserted by way of ratification of the matter at that time, it was unavailing for that purpose, as he could not then ratify to the detriment of the plaintiff in the action, as her right had then accrued and vested, and could not be defeated by it. Andrews v. Insurance Co., 92 N. Y. 596. Besides, ratification presumes the existence of knowledge of all the facts, and the court could well say, from all that appeared, that he was not informed of the whole transaction, and consequently in no position to ratify the wife's act. Kelly v. Geer, 101 N. Y. 664, 5 N. E. 332. It appears, therefore, from the testimony, that the justice was authorized to find that the transaction of the son did not operate as a payment of the defendant's debts; and that, plaintiff's lien having attached, she becomes entitled to have it paid.

The judgment of the county court should therefore be reversed, and that of the justice affirmed. All concur.