# CHARLESTON

## MULLINS v. SHREWSBURY.

Submitted June 13, 1906.     Decided November 27, 1906.

1. HUSBAND AND WIFE—*Conveyances Between.*

A conveyance of land by a wife to a husband, he not executing it, they living together, is void. (p. 696.)

2. EQUITY—*Laches.*

Laches is not imputable to one in possession of the land claimed by him. (p. 696.)

3. ESTOPPEL—*Declarations.*

Estoppel *in pais* will not bar the assertion of title to land where the representation comes only from one's ignorance of his title arising from ignorance of law, and without intent to mislead. (p. 696.)

4. SAME—*By Conduct.*

To bar one of his right to land by estoppel by conduct his representation must have been made with intent to mislead, or with reasonable ground to believe that it will so operate. (p. 697.)

5. SAME.

To bind one by estoppel from his conduct he must have reasonable ground to anticipate that another will change his position, or in some way act on faith of it, to his detriment. (p. 699.)

6. SAME.

A guardian, as such, petitions a court to sell land of infants, stating in her petition that her husband died seized of it, and that it descended to his heirs, and sells part under decree in the case. The land, in fact, belongs to her, not to her husband. She is not barred by that suit from asserting her own title to land not so sold conveyed by one of the heirs to a stranger. (p. 700.)

(SANDERS, JUDGE, Absent.)

Appeal from Circuit Court, McDowell County.

Action by Abigail Mullins against F. C. Shrewsbury and others. Decree for plaintiff, and defendant Shrewsbury appeals.

*Affirmed.*

E. C. MARSHALL, for appellant.

COOK & HOWARD, for appellee.

BRANNON, JUDGE:

Abigail Steele, wife of Allen Steele, being owner of sev-

eral tracts of land at what is now the village of Iaeger, in McDowell county, conveyed them, by deed dated 3d April, 1893, to her husband, they then living together. He laid off some of the land into town lots in the village. Steele died 8th July, 1898, Steele did not unite in said deed. Abigail Steele was appointed guardian of the infant children of her husband and herself, and filed a petition in the circuit court to obtain authority to sell the said land. In her petition she stated that her husband had died owner of the land and that it vested in his children as his heirs. Her petition did not set up her deed to her husband, or state the manner in which he was supposed to have title, but simply averred that he had died seised of the land. A decree was entered in the case authorizing Mrs. Steele, as guardian, to sell the land or parts of it, and she did sell some of the lots under the decree and reported the sales to court, which were confirmed, and she made deeds for some of the lots under such sale. That suit was brought September, 1898, and the sales were made during the year 1898. One of the heirs of age, A. L. Steele, conveyed his eighth interest in the land to F. C. Shrewsbury by deed 26th February, 1903. On 29th September, 1903, Abigail Mullins, she having married the second time, brought the suit we now have in hand against Shrewsbury and the heirs of Steele for the purpose of declaring void and annulling the deed which she had made to her husband, and the deed which A. L. Steele had made to Shrewsbury. Shrewsbury made defence by demurrer to the bill and answer. The demurrer was overruled. Shrewsbury filed an answer in which he set forth the suit which Mrs. Steele as guardian had brought to sell the land of her husband, as above stated, claiming that it constituted a bar by way of estoppel against the right of Mrs. Mullins to impeach either of said deeds to his prejudice. To that part of the answer the plaintiff filed a written exception claiming that that part of the answer relying upon such estoppel was not in law a good defence to the bill. The court sustained said exception, and thus decided that no such estoppel operated against the plaintiff. A decree was pronounced in favor of the plaintiff declaring void and annulling both the deeds aforesaid, and Shrewsbury appeals.

The deed from Abigail Steele to her husband was utterly

void in law. At common law a wife could not by her deed convey land to her husband. Our statute says that no deed from a married woman shall be valid unless her husband joins therein. So both by statute and common law that deed is void. *Smith* v. *Vineyard*, 58 W. Va. 98. The husband did not sign this deed. Even if he had done so, though the question is not involved in this case, I would think that the deed would be void, because a man cannot grant to himself. The provision of our statute requiring the husband to join was intended to protect the wife against improvidence, and applies to deeds to third parties, and we should not construe our statutes so as to enable a husband to defraud his wife by getting hold of her property by a deed from her and him to himself. It has been so decided in *Rico* v. *Brandenstein*, 98 Cal. 465, 35 Am. St. R. 192, 20 L. R. A. 702.

It is hardly necessary to say much about the demurrer to the bill, and it does not seem to be relied on in argument. The only ground to which our attention is called under the demurrer is, that the plaintiff was barred by *laches*. It was less than a year from the date of the deed to Shrewsbury to the date of the suit. Of course, that is no *laches*. True, it was ten years and more from the date of the deed from Mrs. Steele to her husband; but Mrs. Steele was in possession all the time along with her family and was not called upon to sue. Shrewsbury was not in possession. *Laches* will not be imputed to one in possession of land for delay in resorting to equity to establish his legal title or maintain his rights. *State* v. *Sponaugle*, 45 W. Va. 415; 18 Am. Eng. & Ency. L. (2d Ed.) 1245; *Waldron* v. *Harvey*, 54 W. Va. 608. If Shrewsbury says that he can rely on the time during which Mrs. Mullins failed to sue her husband or his heirs, we can say that the relation of the parties excused delay. 18 Am. & Eng. Ency. L. (2d Ed.) 113. And then, too, she was ignorant of law making her deed void. This would excuse her from the *laches* as held in *Crammer* v. *McSwords*, 24 W. Va. 594.

But the great point of reliance for Shrewsbury in the case is the alleged estoppel against relief to the plaintiff by reason of her having brought the suit as guardian to sell the land as land owned by her husband descending to his heirs, and receiving dower money from the sales under that suit, as

stated in her petition in that suit.    Here note that she does not seek to take from a purchaser any land sold under a decree in that case.    Whether she could do that we do not say; but it is proposed in this suit to take from Mrs. Mullins her clear legal title to land not sold in that suit, not because she participated in or induced the conveyance by A. L. Steele to Shrewsbury at the time it was made by consent thereto, or acquiescence therein, or by express or silent admission of the right of A. L. Steele.    The claim is that because she as guardian filed a suit against the heirs to sell the land as theirs, and received money for her dower in the lots which were sold under that suit, to which Shrewsbury was no party, he can rely on the admission of Mrs. Mullins of her husband's title in the record of that suit as conclusive proof of no title in her, and validate Shrewsbury's purchase of A.L. Steele. An admission in pleading in a suit may be admissible as an item of evidence against a party in favor of a stranger to the suit, but only as an item of evidence.    If the admission is not true, it is not binding or conclusive on behalf of the stranger.    Of course, it is not an estoppel by record.    It is only an item of evidence.    *Wilson* v. *Powder Co.*, 40 W. Va. 419; *Hast* v. *Railroad*, 52 *Id.* on p. 407.    Nor is it an estoppel by conduct, that is *in pais*, as it is not an act done in the transaction in question, moving and inciting Shrewsbury's purchase; not an act of Mrs. Mullins done in the purchase by Shrewsbury intended to further it.    It is simply the case of a stranger relying on the admission of a party in a suit of a given state of facts, not in fact true, made with no purpose to induce the sale, made years before the sale, not declared by Mrs. Mullins, directly or indirectly, at the time of the sale, to be true, but simply assumed by Shrewsbury, at his own risk, as true.    In fact, I do not see that it falls under the head of estoppel *in pais*.    It is not the case, or one similar thereto, where one having title and seeing another about to purchase, admits title in the party offering to sell.    That is fraud.    But in the present case it is an admission made at a time years past in a wholly different transaction.    And there is no privity or relationship between these parties.    4 Am. & Eng. Dec. in Eq. 360.    Mrs. Mullins did not by that suit authorize or induce Shrewsbury to act upon the case of herself and the heirs.    "The reason of the rule ceases at once,

when a stranger to the arrangement seeks to avail himself of the statements, which were not made as a basis for him to act upon.    They are, for a stranger, evidence against the party making the statement, but no more than evidence, which may be rebutted; between the parties they form an estoppel in law.    The doctrine is, that where one states a thing to another with a view to the other altering his position, or knowing that, as a reasonable man, he will alter his position, then the person to whom the statement is made is entitled to hold the other bound, and the matter is regulated by the state of facts imported by the statement.  7 Robinson's Prac. 247.

But if we place it under the head of estoppel *in pais*, it does not bar Mrs. Mullins from relief.   1.   She is not shown to have known, as a matter of fact, when she sued to sell the land as guardian, that her deed to her husband was void.    If she did why did she sue to sell the land as her husband's? Why did she buy several heirs' interest, as she did?    She swears she did not know the deed was void.    She was an illiterate woman.    Women not engaged in the active affairs of life are not held to that standard of liability, based on knowledge of law, by which men are tried.    It has been asserted that " the presumption of law is that women are not well informed of their rights."    *Dunham* v. *Chatham*, 73 Am. Dec. 233.    Mrs. Mullins, before she brought that suit, had been advised by counsel that her deed bound her, and that she had better bring a suit to sell some of the land as the land of her children for their support.    There is much law to support the position that ignorance of title, arising from ignorance of law, excuses a party generally.  I shall not discuss that matter, as applied to other transactions; for where the question is whether a party by his conduct has estopped himself from setting up his title, even if his ignorance of his right comes from ignorance of law, that ignorance excuses him from loss of it by estoppel by conduct, because such estoppel involves moral terpitude and intentional wrong and deception.    There must be intent to mislead to another's injury, or reasonable ground to believe it will do so.    *Atkinson* v. *Plum*, 50 W. Va. 104; *Bates* v. *Swiger*, 40 *Id.* 420; *Brant* v. *Va. Coal Co.*, 93 U. S. 326; Pomeroy, Eq., sec. 807.   Ignorance of law will excuse *laches*.

*Cranmer* v. *McSwords*, 24 W. Va. 595. There is stronger reason why it should excuse from the operation of an estoppel. Can it be said that Mrs. Mullins by her suit to sell had it in view to mislead Shrewsbury to purchase in the future? That she even dreamed of such a result? Can it be said that by taking money for dower from the sale of lots made by her she induced Shrewsbury thereafter to purchase, or intended ·to do so, or dreamed of doing so? Can Shrewsbury say that by so doing she has intentionally or fraudulently or wrongfully misled him to make the purchase? The law is that to bind one by such estoppel he must have reasonable ground to anticipate that another will change his position or in some way act on the faith of it to his detriment. Ewart on Estoppel, 155.

To be bound by such an estoppel the party must know his rights. "Acts and declarations of a party based on innocent mistakes as to his legal rights, will not estop him to assert the same." 16 Cyc. 733. See 4 Am. & Eng. Dec. Eq., 269; *Smith·* v. *Spraigue*, 75 Am. St. R. 284; Pomeroy Eq., sec. 806. Point 13 in *Western Mining Co.* v. *Peytona Co.*, 8 W. Va. 406, says: "The statements, acts, or acquiescence of the owner or claimant of land, are generally evidence against him, under all the circumstances, more or less forcible: But, unless they are vitiated by actual fraud, or culpable negligence tantamount to actual fraud, and are relied on by another as the foundation of material action or acquiescence, they do not estop the owner of the land from asserting or proving his title or boundary." "To constitute an equitable estoppel that will operate to transfer title to property the party estopped must have been apprised of the true state of his own title, and must have been guilty of fraud, actual or constructive, or of negligence so gross as to imply fraud, and the other party must not only be destitute of all knowledge of the true state of the title, but of any convenient means of acquiring such knowledge; and he must have relied upon the admissions of the party estopped to such an extent as that he will be injured by allowing their truth to be disproved." *C. & O. R. Co.* v. *Walker*, 100 Va. 69, (pt. 5 Syl.)

2. Another reason why an estoppel does not operate is, that Shrewsbury was not a party to the suit. Pomeroy Eq., sec. 813.

3. Another reason why the estoppel does not operate is, that the suit relied upon to operate as such was in 1898 and Shrewsbury bought in 1903. "The party affected must have immediately or promptly acted upon the matter of estoppel to his detriment." Hogg's Eq. Princ. 143. See 4 Am. & Eng. Dec. Eq., 265.

4. Another reason against the estoppel is, that the suit relied upon as such was brought by Mrs. Steele, not in her own right, not to affect her title, but it was in her capacity as guardian. A suit brought in one's representative capacity is not on the party's own right, but in other right, and does not generally bind the individual rights of the party. Bigelow on Estoppel, 334; *Right* v. *De Graff*, 14 Mich. 164. "When two rights unite in the same person they are considered as in different persons." "Whenever a person sues, not in his own right, but in the right of another, he must, for the purpose of estoppel, be deemed a stranger." 7 Rob. Prac. 260. To hold it an estoppel would tend to induce the guardian to hide the right of the ward in the interest of himself.

In this case it is proposed to take away from Mrs. Mullins, without fault or fraud or intentional culpability, or the shadow of any wrong, her clear title to land without deed as required by law upon the principles of mere estoppel. Here we ought to apply the principles stated in *Water Co.* v. *Browning*, 53 W. Va. 436. "While the owner of land may by his acts *in pais* preclude himself from asserting his legal title, it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles, if they were allowed to be effected by parol evidence of a doubtful character."

In cases of personal property the doctrine may be more readily applied, but as to taking land from its true owner by mere estoppel, it is different. Pomeroy's Eq., (3d Ed.), section 807, makes this distinction, saying that as to land there must be fraudulent intent to estop the party from asserting his legal title.

We think it clear that the decree of the circuit court is right, and therefore affirm it.

*Affirmed.*