## MILLER v. AHRENS et al.

(Circuit Court, N. D. West Virginia. September 3, 1908.)

### No. 583.

1. PARTNERSHIP — FIRM REAL ESTATE — QUIETING TITLE—SUIT TO SET ASIDE DEEDS—PARTIES.

A tract of land conveyed to two or more persons as individuals is not held by them as a partnership, but as tenants in common; and the fact of an agreement between them to hold and use the land as a partnership does not render it necessary that a suit to set aside the conveyance to them should be brought against them as partners.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partnership, §§ 104, 105.]

2. WILLS—DEVISE TO CHURCH CORPORATION—VALIDITY—STATUTORY RESTRICTION—PUBLIC POLICY—RATIFICATION—ESTOPPEL.

A devise to a church corporation of real estate which it was prohibited from taking or holding by the laws of the state was invalid and void as against public policy, and no act of ratification by a person adversely interested could estop him from contesting its validity, or render it enforceable in the courts.

3. SAME—NATURE AND ELEMENTS—PREJUDICE TO PERSON SETTING UP ESTOPPEL.

A testator devised lands in another state to a trustee for a church corporation, which devise was void under the laws of the state where the land was situated. An heir at law commenced a suit to set aside the will, and pending such suit the trustee who had sold certain of the lands to defendants deposited the proceeds in court. Complainant's mother, who was residuary legatee and devisee under the will, was not a party to such suit, but, a settlement having been agreed upon between the trustee and the contestant, she and complainant, who had at the time no knowledge of the invalidity of the devise, were induced to join in a petition asking that the will and the devise be sustained, and the proceeds of the lands distributed, in the belief that they had no interest in such proceeds. Held, that the joining in such petition did not estop them from maintaining a suit to recover the lands under the residuary devise as against defendants, who were in no manner influenced or prejudiced thereby.

4. RELIGIOUS SOCIETIES — CAPACITY TO ACQUIRE AND HOLD PROPERTY—WEST VIRGINIA STATUTE.

The statute of West Virginia (Code 1906, §§ 2606, 2613) which prohibits any church organization from taking or holding real estate, except to an amount, and for the specific purposes enumerated, cannot be evaded by devising real estate to a trustee for a church to be by him sold for its benefit, and the fact that the trustee has by a sale converted the realty into personalty will not validate the trust, or render it enforceable in equity.

5. TAXATION—FORFEITURE OF LAND—FAILURE TO LIST LAND.

Lessees of land in West Virginia, who, while in possession under such lease, obtained a conveyance of the land to themselves from a trustee to whom a void devise of the same was made by the lessor, and caused the title to be transferred to their names on the record, and who did not after the death of the lessor attorn to the true owners for the rent, cannot invoke the state statute forfeiting the land to the state because not entered on the land books and assessed in the name of the true owner during a period of five years, in a suit for the cancellation of their deed to defeat the title of such owner, to whose benefit the payment of taxes by them inured.

[Ed. Note.—Forfeiture for nonpayment, see note to Read v. Dingess, 8 C. C. A. 401.]

**6. ESTOPPEL—"EQUITABLE ESTOPPEL."**

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights, either of property, contract, or remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his condition for the worse [citing Words & Phrases, vol. 3, p. 2498].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Estoppel, §§ 121–124.]

**7. WORDS AND PHRASES—"ESTOPPEL."**

To constitute an estoppel the following elements are essential: (1) There must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or, at least, with the expectation, that it would be acted upon by the other party, or under such circumstances that is both natural and probable that it will be so acted upon. (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must, in fact, act upon it in such a manner as to change his position for the worse [quoting Words & Phrases, vol. 3, p. 2498].

**8. SAME—"ESTOPPEL IN PAIS."**

The doctrine of estoppel in pais has no application where everything is equally known to both parties or the party sought to be estopped was ignorant of the facts out of which his rights sprung, or where the other party was influenced by the acts pleaded as an estoppel [quoting Words & Phrases, vol. 3, p. 2500].

**9. SAME—"RATIFICATION."**

Ratification presumes the existence of knowledge of all the facts, and one not informed of the whole transaction is not in a position to ratify the same [quoting Words & Phrases, vol. 7, p. 5930].

In Equity. On demurrer to amended bill.

On January 9, 1907, a written opinion was filed in this cause overruling defendants' demurrers to the original bill and bill of revivor, and requiring defendants to answer. This opinion will be found in 150 Fed. 644, and fully sets forth the facts as presented by the original bill. On April 4, 1907, the defendants filed their joint and separate answer to the original bill and bill of revivor, in which they admit that Frederick Fickey, Jr., was the owner in his lifetime of the 350 acres of land in Ritchie county; that he made the oil and gas lease thereof to defendant Ahrens as charged. They allege that said lease was taken by Ahrens on behalf of a mining partnership composed of himself, James B. Ross, Henry W. Odell, George W. Sill, now deceased, and Curtis S. Barrett, operating a large number of similar leases under the name of the Cairo Oil Company; that such partners as such company drilled sundry wells which produced and some still produce oil in paying quantities, and it is insisted that defendants are not sued as a partnership under the firm name of the Cairo Oil Company. The death of Fickey testate, as charged, is admitted; also that his will was probated in Baltimore city, Md., and in Randolph county, W. Va., and that thereby he devised and bequeathed to his sister Ann R. Miller the residuum of his estate, and that such clause would ordinarily entitle her to all his property not disposed of, but it is insisted that such cannot be so in this case for reasons stated. They admit that this will of Fickey's devised this tract of land to Woods, trustee, in trust to sell and pay the proceeds thereof to the First Spiritualist Church of Baltimore; that Woods, as trustee, did sell and by deed conveyed said land to Ahrens and such deed was duly recorded in Ritchie county; that afterwards Ahrens sold an undivided three-fourths interest therein to Ross, Odell, Sill, and Barrett, and conveyed the same to them by deeds duly recorded. It is charged that

the purchase from Woods was made by Ahrens, and his conveyances to Ross, Odell, Sill, and Barrett were executed for the purpose of carrying out the projects of said mining partnership to which the same now belongs. It is charged that the First Spiritualist Church of Baltimore is a Maryland corporation, and, on information and belief, it is denied that it is a religious denomination, or seeks to teach or spread the gospel of religion, and that the devise in its favor to Woods, trustee, was contrary to the laws of this state, or that Ann R. Miller under the residuary clause was entitled to this land. They admit they are claiming title in fee to this land, and are appropriating all the oil produced therefrom and in excess of what they would be entitled to under the oil lease from Fickey. They deny plaintiff's right to any part of the oil and gas produced, and refuse to discover how much of such oil and gas has been produced until right in plaintiff is legally established. They admit Ann R. Miller to be dead, but deny that she made a will, and deny plaintiff's right to institute suit as devisee. They admit death of Sill and that by his will he gave control of all gas and oil properties in which he was interested to his executors named as defendants. They admit that they are refusing to pay any royalties under the lease or in any way recognizing plaintiff's right to any part of the oil and gas, and charge that she is estopped, despite the illegality of said devise to Woods and of his deed to Ahrens, under the Constitution and laws of this state, to set up any such claim for that, they charge, Fickey was survived by two sisters, Sarah Elizabeth Hopkins and said Ann R. Miller, mother of the plaintiff; that the former, after Fickey's death, filed her petition and caveat in the Maryland probate court contesting said will and seeking to revoke Woods' letters testamentary; that Woods filed his answer to this petition, denying its allegations, to which answer the petitioner, Sarah Elizabeth Hopkins, filed a replication, and such proceedings were had that the issue joined was sent to the superior court of Baltimore to be tried by jury; that prior to this time Woods had filed his petition in the circuit court of Baltimore city alleging Fickey's death, his will, and the probate and recordation thereof, his appointment thereunder as sole trustee to sell lands in West Virginia, including the 350-acre tract in controversy, make conveyances thereof, collect the proceeds and pay over the same to said Spiritualist Church; that he had sold the 350 acres to Ahrens for $7,000, subject to the oil lease, and asking such court to advise and direct him in the administration of said trust; that said court by order of May 26, 1899, assumed jurisdiction and confirmed said sale to Ahrens; that Woods filed in said court his report of sale of said lands, alleging himself to be ready to distribute the proceeds, but, inasmuch as said First Spiritualist Church was a religious sect which had not received the sanction of the Legislature to accept said gift, asking to be allowed to pay into court the fund until such legislative sanction could be obtained. It is then charged that this court referred Woods' account to an auditor, who ascertained a balance from sale of lands of $40,592.62, which included the $7,000 arising from the sale of the 350 acres in controversy to Ahrens, and the amount to be distributed to the church was permitted to be paid into the registry of the court to await the Legislature's sanction and until the court's further order. Defendants then charge that on May 23, 1901, while the petition and caveat of Sarah Elizabeth Hopkins was pending in the superior court of Baltimore awaiting a trial of the issue by jury, and while the proceeds of the sale of lands, including the $7,000 arising from the sale of the 350-acre tract, were in the registry of the said circuit court, the said two sisters, Sarah Elizabeth Hopkins and Ann R. Miller, and the First Spiritualist Church of Baltimore, filed their petition in said circuit court of Baltimore, by which they showed to the court that the church was devisee under the will of Fickey and as such was entitled to the money arising from these sales of lands exceeding $40,000, the pendency of such caveat, the issues to be tried by jury arising thereout; that these two sisters were sole heirs at law of Fickey; that they were desirous that the will and the devise to the church be sustained inasmuch as the church was willing to pay $17,500 to Sarah Elizabeth Hopkins, who received little by the will, and asked that $17,500 be paid to the said church or to Charles R. Schirm, its attorney, to the end that the will might be established and the devise to the church be confirmed; that, in accord

with the prayer of this petition, it was ordered by this circuit court of Baltimore city that said sum of $17,500 be paid to Schirm, the church's attorney, out of the moneys held in the cause, and this sum was immediately paid to Sarah Elizabeth Hopkins by said Schirm in accordance with the prayer of said petition, and that by the payment thereof under the circumstances aforesaid the said Ann R. Miller ratified, approved, and confirmed the devise to Woods, trustee, for the purposes of the trust set forth in Fickey's will. It is then charged that on May 25, 1901, a final order was entered upon the petition and caveat of Sarah Elizabeth Hopkins, by which the probate of the will was confirmed by consent of the church and the two sisters, by reason of all which it is alleged that plaintiff is estopped from assailing or questioning the validity of the devise and conveyance of, or distribution of, the proceeds of sales of said lands.

It is then alleged that plaintiff has no right to maintain this suit, for the said 350 acres of land has not been upon the land books of Ritchie county in either the names of Ann R. Miller or Mary Virginia Miller for five successive years since 1898 and assessed with taxes, and that, therefore, plaintiff's title is forfeited and vested in the state. Records of the proceedings referred to from the orphans' and circuit courts of Baltimore city are filed as exhibits with this answer. On May 6, 1907, the plaintiff filed exceptions to this answer relating to all allegations therein touching the mining partnership alleged to exist or to have existed between the defendants; to the allegations that Ahrens purchased the 350 acres of land for and on behalf of this partnership; to all allegations charging ratification of the devise to Woods, trustee, for the benefit of the church, and claiming estoppel to deny its validity and to all allegations charging forfeiture of the land. In August following she, by leave, filed an amended bill in the nature of a special replication to the answer of the defendants, in which she charges: That the mining lease of Fickey was made to Ahrens personally, and not to any copartnership. That none of the defendants are designated or described as copartners in any of the deeds assailed, nor is the Cairo Oil Company mentioned or referred to therein. That long after the defendants had acquired claim of title and long after Ahrens had paid the purchase price to Woods, trustee, Sarah Elizabeth Hopkins did file caveat and petition in the orphans' court of Baltimore to annul the order probating Fickey's will on the grounds of mental incapacity of, and undue influence over, testator and defective execution of the will itself. That Woods, trustee, answered this petition, and issues were framed and sent to the superior court of Baltimore for trial by jury. That these issues were (1) whether Fickey was of sound mind and capable of executing the will; (2) whether the paper writing probated was executed by him as, and for, his last will and testament; (3) whether it was procured to be executed by him through fraud; and (4) whether its execution was procured by undue influence over him. That in the trial of these issues the court directed Sarah E. Hopkins to be plaintiff and Woods, executor, to be defendant. That neither the plaintiff nor her mother, Ann R. Miller, were party to, or represented by counsel in, the controversy at any time. That during trial Sarah E. Hopkins and her counsel and the counsel for Woods and the church agreed to compromise the contest, and she, Mrs. Hopkins, agreed thereby to dismiss her petition and consented to accept $17,500 as payment therefor. That thereupon Charles R. Schirm, president of the church and one of counsel for Woods, trustee and executor, with other counsel for Woods and the church, prepared a petition in the names of Sarah Elizabeth Hopkins, Ann R. Miller, the First Spiritualist Church of Baltimore, addressed to the circuit court of Baltimore, praying said court to order $17,500 out of the $40,000 standing to the credit of said church in said court to be paid to Schirm, alleging the petitioners, including Ann R. Miller, to be desirous that the will and devise to the church be sustained, which petition they procured plaintiff and her mother to sign and file in said circuit court. That plaintiff and her mother did not desire said devise to be sustained. No order sustaining it was entered by said court. It had no jurisdiction to sustain it. There was no issue in said court requiring or authorizing construction of said will as to the validity of said devise, and the statement of desire in the petition was immaterial and irrelevant.

It is then charged that neither plaintiff nor her mother was in any way consulted, aided, or participated in the compromise. That the payment of the $17,500 to Mrs. Hopkins was not made by any agreement on their part, nor did they receive any part thereof or any other thing. That they did not know from what source the $17,500 was derived, did not know the 350 acres of land had been sold by Woods to Ahrens, did not know the nature of the petition signed by them, except that they were informed by an executor of the will of Fickey, acting as counsel for the trustee or church in the contest, that it was a paper to stop the attempt to break said will which they must sign, and that the money was not to come off Ann R. Miller. That her mother was an aged woman, and neither she nor plaintiff were experienced in business, had never lived in West Virginia, nor prior to Fickey's death owned any property there; knew nothing of the laws of that state touching the right of churches or their trustees to hold property; were wholly unadvised at the time of the invalidity of said devise, and, if they had been so advised, would never have signed said petition. It is then charged that, while they had no knowledge, counsel for the church and trustee did know of the invalidity of said devise under the laws of West Virginia, that plaintiff and her mother had made no claim to dictate the disposition of the funds in court, had never appeared in said cause, and that there was no proper cause for them signing the petition, and that the procuring them to do so was to embarrass them, if possible, in the assertion of title to said land when, if ever, they should learn the truth and their right thereto. That none of the defendants herein were parties to said proceeding in the superior or circuit courts of Baltimore. That defendants never notified plaintiff or her mother of the purchase by them of the land from Woods, trustee. That neither she nor her mother had ever known or heard of defendants at the time they signed the petition or for many months thereafter. That at the time Ahrens purchased from Woods he was operating the land for oil and gas, and knew the value thereof. That he and his codefendants were paying in royalties alone for oil taken therefrom upwards of $285 per month. That the $7,000 paid was grossly disproportionate to its value, and it is charged that Ahrens was informed that the devise to Woods was invalid, and his purchase was made upon hazard and speculation, and not in good faith. That after the recording of the deed from Woods, trustee, to Ahrens, the land was transferred and has been assessed in the name of Ahrens and co-claimants for each and every year since, and no taxes are due thereon to the state. That such taxes have been so assessed and paid to, and by, defendants, who claim title under the same grant and the same title as plaintiff, and who were and are tenants or lessees of hers, in debt to her for rents and royalties to an amount of upwards of $25,000, which makes forfeiture under the circumstances impossible. Plaintiff then tenders to allow for these taxes paid by defendants upon an accounting had.

To this amended bill the defendants have filed a demurrer, assigning as grounds therefor that the matters set forth in said amended bill do not in law constitute defense to either the estoppel or forfeiture relied on by them in their answer, and the cause has been submitted upon this demurrer.

Maynard F. Stiles, for plaintiff.
Harry P. Camden, for defendants.

DAYTON, District Judge (after stating the facts as above). In my opinion heretofore filed in this case passing upon the demurrer to the original bill (150 Fed. 644) I held that the devise to Woods, trustee, for the benefit of the First Spiritualist Church of Baltimore, a Maryland corporation, assuming it to be a religious organization, was absolutely void as being contrary to the public policy and to express constitutional and statutory provisions of this state; that under express statutory provision, the devise having failed, the legal title to the 350 acres in controversy passed, under the residuary clause of the will,

to plaintiff's mother, Ann R. Miller; that by reason of the relation of landlord and tenant existing between plaintiff and defendants under, and by virtue of, the lease for oil and gas executed by Fickey in his lifetime to Ahrens, plaintiff had right to maintain this suit for the purpose of quieting her title thereto and removing clouds placed thereon by her said tenants, the defendants. By the answer of defendants three defenses are sought to be made: First. That defendants constitute a mining partnership, and are not sued as such. Second. That Ann R. Miller, the mother under whom plaintiff claims as sole devisee and heir at law, ratified the devise to Woods, trustee, for the benefit of the First Spiritualist Church of Baltimore, thereby validating it. Third. That plaintiff's title has become forfeited and vested in the state by reason of the land being omitted from the land books and not assessed with taxes for five consecutive years since 1898.

The first of these grounds of defense can be quickly disposed of. It is not alleged in the answers that the deed of Woods to Ahrens or those of Ahrens to his codefendants, sought to be set aside, anywhere disclose a partnership relation. It is not alleged that the oil and gas lease of Fickey to Ahrens disclosed such relation. "A joint purchase of the land by two does not constitute a copartnership in respect thereto, nor does an agreement to share the profits and losses on the sale of land create a partnership. The parties are only tenants in common." Clark v. Sidway, 142 U. S. 682, 12 Sup. Ct. 327, 35 L. Ed. 1157.

In considering the second defense, we must constantly bear in mind the distinction between contracts void for reasons of state, declared so by its laws or by its policy, as defined by its courts as being against the public interests, and contracts not inherently vicious, but void or voidable by reason of the infirmity of the parties, their fraudulent acts, misrepresentations, or misconduct, or by reason of defects in the execution thereof. When the disability to contract is removed, the party who has acted under disability may ratify and confirm the void act not in itself malum prohibitum. The fraudulent act, misrepresentation, or misconduct of one party to a contract can be waived or condoned by the other, and by such waiver or condonation the latter may completely estop himself to defend against the contract on the ground of such fraud, misrepresentation, or misconduct. If the execution of the instrument be defective, such defects may be waived or subsequent ratification in legal form may be made. There never can be by the parties either ratification or confirmation of a contract that is expressly prohibited by law to be made, or which contravenes public policy. The interests of the state and society intervene and are paramount. If the state forbids the doing of an act because to do it is against public good, one cannot accomplish the act by having another confirm it. Both the act and the confirmation are unlawful, and the one can in no way legalize the other. One cannot be estopped from disclaiming a contract prohibited by law or public policy from being made, no matter how hard he may theretofore have tried to ratify and enforce it. In this case I have in my former opinion reached the conclusion that the Constitution and laws of West Virginia expressly prohibit the incorporation of religious organizations; that they prohibit them as voluntary associations from acquiring more than 4 acres of

land in an incorporated city, town, or village, and not exceeding 60 acres outside of such city, town, or village; that such limited areas, too, can only be held for use as a place of public worship, a minister's residence, and a burial place; that all gifts, conveyances, and devises of real estate in larger area and for other uses are absolutely void as against a public policy established and enforced, without break, for more than 100 years in the states of Virginia and West Virginia; that no foreign church corporation can, by reason of its being a foreign one, acquire any superior right to exist or take land in this state under our laws than could a domestic one. I can see no reason to change these conclusions. If they be sound, then it must be admitted that Fickey could not by this devise invest this church corporation with title to this land. Neither could his sister, Ann R. Miller, after his death and when she held as residuary devisee, have conveyed it to this organization and given it power to take and hold it. It follows inevitably that no act of hers, therefore, either by deed or by renunciation in any court, could confer the right, expressly prohibited by law, upon this church to take and hold this land. These principles are settled by a long line of decisions, among which may be cited Hall v. Coppell, 7 Wall. 542, 19 L. Ed. 244; Oscanyan v. W. R. Arms Co., 103 U. S. 261, 26 L. Ed. 539; Spare v. Home Mut. Ins. Co. (C. C.) 15 Fed. 707; Armstrong v. Toler, 11 Wheat. 258, 6 L. Ed. 468; In re Comstock, Fed. Cas. No. 3,078; Mayhood, Public Policy, pp. 2, 155. Possibly the law is as forcibly stated as it can be in Hall v. Coppell, supra, where it is said:

"The instruction given to the jury, that, if the contract was illegal, the illegality had been waived by the reconventional demand of the defendants, was founded upon a misconception of the law. In such cases there can be no waiver. The defense is allowed, not for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. The maxim, 'Ex dolo malo non oritur actio,' is limited by no such qualification. The proposition to the contrary strikes us as hardly worthy of serious refutation. Wherever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and void for the same reasons. Whatever the contamination reaches it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation."

But, in addition to this, I have no trouble in concluding that the facts set up in the answer and explained and traversed by the allegations of this supplemental bill would be wholly insufficient to create an estoppel against plaintiff or her mother, if the case were one of an ordinary contract. "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might have perhaps otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his condition for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy"—citing Louisville Banking Co. v. Asher (Ky.) 65 S. W. 831 (quoting 2 Pom. Eq. Jur. § 804); The Alberto (C. C.)

24 Fed. 379, 382; Richardson v. Olivier, 105 Fed. 277, 282, 44 C. C. A. 468, 53 L. R. A. 113; The Ottumwa Belle (D. C.) 78 Fed. 643, 647; First Nat. Bank v. Dean (Super. N. Y.) 17 N. Y. Supp. 375, 377; Nell v. Dayton, 43 Minn. 242, 45 N. W. 229, 230; Griffith v. Rife, 72 Tex. 185, 12 S. W. 168, 172; Whiteselle v. Texas Loan Agency (Tex. Civ. App.) 27 S. W. 309, 315; Miller–Jones Furniture Co. v. Ft. Smith Ice & Cold Storage Co., 66 Ark. 287, 50 S. W. 508, 509; Nash v. Baker, 40 Neb. 294, 58 N. W. 706, 707; Ricketts v. Scothorn, 57 Neb. 51, 77 N. W. 365, 369, 42 L. R. A. 794, 73 Am. St. Rep. 491; 3 Words & Phrases, p. 2498.

According to the allegations of the supplemental bill, Ahrens had purchased from Woods, trustee, paid the purchase money, and taken conveyance for this land long before he knew plaintiff or her mother, and long before she and her mother signed the petition expressing a desire that the devise be upheld, and agreeing to the payment of $17,- 500 to Schirm for the benefit of Mrs. Hopkins out of the funds in court. How can he or his codefendants come and say that in making this purchase, paying over the purchase price and taking deed for this land, Ahrens "relied in good faith" upon an act which had not at the time been done, and how could he have been led thereby "to change his condition for the worse"? But again:

"To constitute an estoppel, the following elements are essential: (1) There must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or, at least, with the expectation, that it would be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse" (citing many cases). 3 Words & Phrases, p. 2498.

Finally:

"The doctrine of estoppel in pais has no application where everything is equally known to both parties, or the party sought to be estopped was ignorant of the facts out of which his rights sprung, or where the other party was influenced by the acts pleaded as an estoppel" (citing authorities). 3 Words & Phrases, p. 2500.

"Acquiescence imports and is founded on knowledge. Acquiescence cannot arise unless the party against whom it is set up is aware of his rights. A party cannot acquiesce unless fully appraised of all his rights and all the material facts and circumstances of the case." Hermann, Estop. 1191.

"Ratification presumes the existence of knowledge of all the facts, and one not informed of the whole transaction is not in a position to ratify the same" (citing Hommel v. Meserole, 18 App. Div. 106, 45 N. Y. Supp. 407, 409; King v. Mackellar, 109 N Y. 215, 16 N. E. 201, 203; Beck v. Donohue, 27 Misc. Rep. 230, 57 N. Y. Supp. 741, 742). Words & Phrases, p. 5930.

See, also, Mullins v. Shrewsbury, 60 W. Va. 694, 55 S. E. 736, a case very much in point.

If the allegations of this supplemental bill be true, and I must assume them to be so on demurrer, neither Ann R. Miller nor her daugh-

ter, the plaintiff, had any knowledge whatever of the illegal character of the devise to the church or of the mother's rights under the residuary clause of the will to this land; while defendants, if they did not know these facts at the time they purchased, had certainly much superior opportunities to know them, operating as they were in West Virginia under her laws and in contact with her lawyers. When Ahrens purchased from Woods, trustee, he must have known that Woods was selling only such title as was vested in him, and his business sense would have dictated to him the necessity of having an examination made to ascertain what the character of such title was.

But it is insisted that this devise of real estate was to Woods, trustee; that the will directed it to be sold by him and the proceeds paid to the church, whereby an equitable conversion was made of it as realty into personalty, which, in turn, was taken out of the state and placed in the custody of a Maryland court which then had exclusive jurisdiction over its disposition. This is arguing simply in a circle, and reduces itself to these conclusions: Fickey, it is true, could not devise the land direct to the church, for, if he did, he would be placed in the attitude of doing something against the policy of the law and expressly forbidden by it. He, however, for the purpose of accomplishing this result can simply intervene a trustee, and direct him to sell and give the proceeds to the unlawful purpose. It is not necessary to consider long a proposition having as its basic idea that a court of equity will lend its administration to the accomplishment by indirection of an unlawful act. While it is true that it will enforce its doctrine of equitable conversion, and "consider that as done which is directed to be done" in legitimate cases, it is also true that it will never enforce this doctrine or any other one when its enforcement aids or accomplishes an act against the law or its public policy, an act prohibited. On the contrary, it sweeps away all technicalities, cuts across all cross lots, and opposes with its full power any and all efforts to evade the law and its just and equitable purposes. The weakness of this proposition lies in ignoring the fact that these church organizations are prohibited by law from taking directly or through trustees real estate by gift, conveyance, or devise, except in the amounts and for the purposes set forth by statute. While Woods as an individual could take under devise, Woods, as trustee, as the mere representative of the church, for its sole use and benefit, could no more take than could the church itself. Had the devise been to the church as trustee with direction to sell the land and devote the proceeds to its own use, the condition would not have been one whit changed. Equity never established the doctrine of trusts, never created, suffered, or upheld one, for the purpose of securing the commission of a wrong against society or the violation of an inhibition expressly made by Constitution and statute. It is only necessary to refer to the case of Carskadon v. Torreyson, 17 W. Va. 43, where the real estate by solemn deed was sought to be conveyed to trustees for the purpose, among others, even allowed and defined by the statute, to wit, that of a residence for the church's minister, but, because its trust conditions did not as a whole conform to the purposes and requirements of the statute, the conveyance to these trustees was held void.

Touching the third ground of defense—the alleged forfeiture of the land to the state for nonassessment of taxes—little need be said. Plaintiff's counsel in his brief has raised the very interesting question whether, under the Legislative act of 1882, there can be forfeiture for nonassessment of taxes in this state of tracts of less than 1,000 acres since that date; but it is not necessary for me to decide this question, and it is much better that such questions should be determined by the courts of the state. It is enough to say here that it is admitted that Ahrens took possession of this land under the oil and gas lease from Fickey which by its terms has not expired. As such tenant payment of taxes could properly be enforced out of property of his and his codefendants upon said land. If he and his codefendants have title or attempted to take title from Woods, trustee, it was Fickey's title, the same title and source of title, as claimed by plaintiff. If Ahrens has by a void conveyance caused this title to be transferred on the land book from the name of the true owner to himself and associates, and has paid the taxes on the land, such payment by him inures to the benefit of the true owner under the well settled law on the subject enunciated in Waldron v. Harvey, 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 959; Sturm v. Fleming, 26 W. Va. 54; Lynch v. Andrews, 25 W. Va. 751; Hall v. Hall, 27 W. Va. 468. If, on the other hand, they have not had this land transferred to them and paid the taxes, and if it has been forfeited to the state in the name of Fickey or his devisees or heirs, the right of redemption remains in the plaintiff, and the defendants would not be heard in equity to make defense of this forfeiture in their effort to take title before attorning to their landlord. It follows that the demurrer to this supplemental bill must be overruled, and that I must hold that the defendants' answer, so far as it seeks to set up as defense partnership by defendants in the land, ratification of this devise to the First Spiritualist Church by plaintiff, and her mother and forfeiture of the land, under the facts stated in the supplemental bill and the answer, must be held unavailing.

It is to be noted, however, that respondents in this answer say:

"They do not know for what purpose said church was incorporated, or whether the creed it sought to inculcate or the rites and practices which it sought to introduce and propagate were religious in their character or not, and on information and belief these respondents deny that the denomination so incorporated under the name of the First Spiritualist Church of Baltimore is a religious denomination, and deny that said church seeks to teach and spread the gospel of religion."

I think this allegation fully sufficient to put in issue the character of the First Spiritualist Church of Baltimore as a corporation and organization, and this is a question of fact to be determined by evidence. Of course, if it be not an organization based upon and for the purpose of teaching and inculcating religion, but, on the contrary, a corporation organized for legitimate wordly pursuits and ends, then all that I have said in this and my former opinion, assuming the allegations of the bills to the effect that it was such religious organization to be true, as I had to do on demurrer, can have no application to it.